Juan Carlos RODRIGUEZ, Appellant,

v.

ED HICKS IMPORTS, Appellee.

No. 13-88-052-CV.

Court of Appeals of Texas,
Corpus Christi.

Jan. 19, 1989.

Rehearing Denied March 9, 1989.

William J. Tinning, Corpus Christi, for appellant.

Kevin B. Finkel, Corpus Christi, for appellee.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

Appellant-plaintiff, Juan Carlos Rodriguez, appeals from a summary judgment granted in favor of defendant-appellee, Ed Hicks Imports. Appellant, Rodriguez, filed suit against Ed Hicks for injuries he received when the radiator in an automobile "overheated and exploded."

Appellant, Rodriguez, alleged: (1) that appellee, Ed Hicks Imports, represented and warranted that the car was free from any such defects and in good, workmanlike condition, fit for a particular use, and of general merchantable quality when sold, and knew or, in the exercise of due care, should have known that these representations were false; (2) that appellee, Ed Hicks Imports, knew or should have known that the radiator or the radiator cap was defective, unfit, or mismatched and that the car was overheating; (3) that appellee, Ed Hicks Imports, by its acts or omissions was negligent or grossly negligent and

knew or, in the exercise of ordinary care, should have known that the car and its components had these defects; (4) that appellee, Ed Hicks Imports, was negligent in selling a car that had a defective radiator and not warning the consumer of that defect; and (5) that this course of conduct violates section 17.46(b)(1), (3), (5), (7), (11), (13), (23), and section 17.50 of the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA).

■ After the trial court granted the summary judgment, an attempted appeal to this Court (court of appeals cause number 13–87–386–CV, September 25, 1987) was dismissed because there were remaining causes of action and the appealed judgment was not final. Thereafter, appellant, Juan Carlos Rodriguez, filed a motion to sever the counterclaim. The trial court granted the severance and this appeal from the summary judgment followed. Appellee, Ed Hicks Imports, argues here by cross-point, that the severance was improper because its counterclaim was a compulsory counterclaim under Tex.R.Civ.P. 90, and severance of compulsory counterclaims is an abuse of discretion under Rule 174.

The trial court did not commit error by severing the counterclaim from the original cause of action. Tex.R.Civ.P. 41 provides that "[a]ny claim against a party may be severed and proceeded with separately." A claim may be properly severed if it is part of a controversy which involves more than one cause of action, and a trial judge has broad discretion in the manner of severance and consolidation of causes of action. *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525 (Tex.1982); *Shafer Plumbing and Heating, Inc. v. Controlled Air, Inc.*, 742 S.W.2d 717, 721 (Tex.App.—San Antonio 1987, no writ). In *Forderhause*, the Supreme Court stated that a reformation claim, severed after summary judgment in an apparent effort to expedite appellate review of the original cause of action, did not amount to an abuse of discretion by the trial judge. *Forderhause*, 641 S.W.2d at 526. The cross-point is overruled.

The movant for summary judgment has the burden of showing that there is no genuine issue of material fact regarding one or more of the essential elements of the plaintiff's cause of action and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). In deciding whether or not a disputed material fact issue exists to preclude summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon*, 690 S.W.2d at 548–49. Every reasonable inference will be indulged in favor of the non-movants and any doubts resolved in their favor. *Nixon*, 690 S.W.2d at 549.

On August 19, 1984, Diana Maria Trevino and her boyfriend, appellant, Juan Carlos Rodriguez, left their homes to attend a birthday party at Chuck E. Cheese's located on Staples Street. She picked him up in her 1980 Buick Regal, and they got on the freeway. About the time they reached the Weber Road overpass, Ms. Trevino detected a hissing noise emanating from underneath the engine hood. She also saw a red indicator light come on in the dashboard. Upon reaching the Everhart Road overpass, she noticed smoke coming from underneath the hood. She left the freeway, turned onto Staples, and parked the vehicle at a service station. No mechanical work was done to the car. They stayed at the birthday party for about one and one-half hours. They returned to the car and drove to a residence on Islia Street. Ms. Trevino said that while driving to Islia Street, she smelled the odor of "burnt rubber" inside the car. They remained at this residence for about ten minutes and proceeded to her residence. They parked the car in her driveway, and she asked appellant, Juan Carlos Rodriguez, to check the car. She unlatched the engine hood, and he got out of the car and lifted the hood. Ms. Trevino then got out of the car just in time to see him being splashed with brown colored water. He screamed and rolled around on the ground.

Appellant, Juan Carlos Rodriguez, said that when he lifted the engine hood, he saw

that the radiator cap had popped up a little bit and water was gushing out. He said the radiator cap then came off and water shot all over him. He also said that he did not touch anything other than the engine hood. He received burns to his body and spent eighteen days in the hospital recovering from his injuries. He admitted that he was not involved in any way in the purchase of the Buick, and no one from appellee, Ed Hicks Imports, made any representations to him concerning the vehicle.

The summary judgment record shows that Ms. Trevino's mother, Dolores Castro, purchased the Buick from appellee, Ed Hicks Imports, on August 14, 1984. The car was intended to be used by Ms. Trevino in driving to and from Del Mar College. Ms. Castro does not recall any employee of appellee, Ed Hicks imports, making any representations to her regarding: (1) the car's performance; (2) whether or not appellee, Ed Hicks Imports, made any repairs to the car; or (3) whether or not the car needed any repairs. On the day of purchase, she signed a "MOTOR VEHICLE PURCHASE ORDER." This document states that the car was sold to her "as is." She also signed on that day a *"MOTOR VEHICLE WARRANTY DISCLAIMER."* This document states that the car was sold without any warranty and that appellee, Ed Hicks Imports, neither assumed nor authorized any person to assume for it any liability in connection with the sale of the vehicle.

Rafael Castro, stepfather of Diana Maria Trevino, said that he was told that the car was running "good." Castro took the car for a test drive and noticed nothing about its performance indicating a malfunction. In fact, he said that the car seemed to be running "pretty smooth." After its purchase but prior to the accident, Mr. Castro had the car tuned up. He also checked the water level inside the radiator and determined that it contained plenty of water. Castro stated that neither of the two salesmen involved in the sale of the car made any representations to him regarding the mechanical condition of the car. Shortly after the incident, Mr. Castro made a cursory inspection of the radiator and saw that it

was intact. The day after the incident, he drained all the water out of the radiator, flushed it for about forty or fifty minutes, and then added new antifreeze. Finally, he replaced the thermostat and screwed on the same radiator cap. He replaced the thermostat only because he thought it caused the car to overheat. The thermostat was not shown to be defective.

Diana, appellant's girl friend, also test drove the Buick. She found nothing wrong with the car. She experienced no overheating problems prior to the accident. After the accident, she said that the car did not overheat again for "a good year or so."

Tom Z. Cantu, one of the two salesmen who sold the car to Ms. Castro, test drove the vehicle before it was placed on the sales lot. As far as he could tell, the car was mechanically sound. Prior to the date the car was sold to Diana, he said that Ed Hicks Imports, did not have an established policy or procedure to test the cooling systems of its used cars. He did not check the thermostat or the water pump and did not remember the Buick running hot. Furthermore, when he test drove the car, it did not overheat. He also did not see any leaky hoses or notice water coming from underneath the vehicle. He said that when Ms. Castro purchased the vehicle, he did not represent to the Castros anything about the car's radiator, cooling system, or that the car was in a mechanically sound condition.

By his first point of error, appellant, Rodriguez, argues that the summary judgment proof is defective in its form because the affidavit proof was not shown to be true and correct, or in compliance with the best evidence rule.

The summary judgment record contains business records of Ed Hicks Imports. These business records are accompanied by the affidavit of Charles A. Hicks, the custodian of records. Appellant, Rodriguez, argues that Mr. Hicks' affidavit is defective because (1) it does not state "positively and unqualifiedly" that it represents facts to be true and correct, (2) "the records attached to the affidavit are stated to be the original

or exact duplicates of the original with no explanation or accounting as to the originals, contrary to the Best Evidence Rule, when the attached are obviously copies," and (3) Mr. Hicks' statement that he is "of sound mind and otherwise capable of making this affidavit" is conclusory in nature and not established by facts.

■ Business records accompanied by a properly phrased and executed affidavit are treated as self-authenticating under Tex.R.Civ.Evid. 902(10). Rule 902(10)b sets forth an affidavit form which may be used to accompany business records. This rule also states that an affidavit shall be sufficient if it follows this form. Hicks' affidavit closely tracks the form language suggested by Rule 902(10)b and is also executed. Thus, the business records accompanied by the affidavit will be treated as self-authenticating under the rule.

■ Tex.R.Civ.Evid. 1002 states that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required except as otherwise provided in these rules or by law." However, Rule 1003 provides that "[a] duplicate is admissible to the same extent as an original unless (1) a question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Rodriguez failed to raise a question regarding the authenticity of the original business records and offered no argument or proof that under the circumstances it would be unfair to admit the copies of the business records in lieu of the originals. These rules do not require an explanation or accounting regarding the originals. We conclude that the business records of appellee, Ed Hicks Imports, are admissible summary judgment evidence. The first point of error is overruled.

By his second point of error, the appellant argues that the trial court erred in granting summary judgment on his DTPA claim because there is a genuine issue of material fact regarding his status as a consumer, and there are genuine issues of material fact concerning all elements of his DTPA claim.

■ First, appellant must qualify as a consumer, as that term is defined in Tex. Bus. & Com.Code Ann. § 17.45(4) (Vernon 1987), to maintain a private cause of action under section 17.50 of the DTPA. *Melody Home Manufacturing Co. v. Barnes*, 741 S.W.2d 349, 351 (Tex.1987). Section 17.-45(4) defines "consumer" as a person who seeks or acquires by purchase or lease, any goods or services. *March v. Thiery*, 729 S.W.2d 889, 896 (Tex.App.—Corpus Christi 1987, no writ).

■ In order for a person to qualify as a consumer under the DTPA, he must have sought or acquired goods or services by purchase or lease, and the goods or services purchased or leased must form the basis of the complaint. *Barnes*, 741 S.W.2d at 351–52. Privity between the plaintiff and defendant is not a consideration in deciding the plaintiff's consumer status under the DTPA. *Kennedy v. Sale*, 689 S.W.2d 890, 892–93 (Tex.1985). A plaintiff establishes his standing as a consumer by the terms of his relationship to a transaction, not by a contractual relationship with the defendant.

■ We conclude that appellant failed to meet the requirements necessary to establish his consumer status. Mrs. Castro purchased the Buick for her daughter's use. Appellant, Rodriguez, was not involved in the purchase. No one from Ed Hicks Imports made any representations to him concerning the vehicle. Clearly, he did not seek or acquire by purchase or lease any goods or services that formed the basis of his complaint. He had no relationship to the transaction and, therefore, is not a consumer under the DTPA. He cannot maintain a cause of action under the DTPA. We hold that summary judgment was appropriately granted against appellant regarding his claim under the DTPA.

By his third point of error, appellant argues that the trial court erred in granting summary judgment on his strict products liability claim because genuine issues of material fact exist regarding all elements of this claim.

In order for appellant, Juan Carlos Rodriguez, to recover for harm caused by an alleged defective and dangerous product, he has to prove that: (1) the product in question was defective; (2) the defect existed at the time the product left the hands of the defendant; (3) that because of the alleged defect, the product was unreasonably dangerous to himself; (4) that he was injured or suffered damages; and (5) that the defect was the proximate cause of his injuries. *Abbot Laboratories v. Gravis*, 470 S.W.2d 639, 643 (Tex.1971); *Gravis v. Parke–Davis & Co.*, 502 S.W.2d 863, 868 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.).

The crucial inquiry to this allegation is proof of the existence of a defect in the Buick's radiator or radiator cap. There is simply no evidence in the record that the radiator or its cap were defective. In fact, no witness pointed to any specific defect existing in the Buick car which could have possibly caused the vehicle to overheat or eject hot water from its radiator. Following the accident, Mr. Castro, Diana's step father, flushed the radiator, replaced the thermostat, added new antifreeze, and put on the same radiator cap that came with the vehicle. The thermostat was replaced only because Mr. Castro *thought* it might have caused the problem. It was not proved to be defective. After the incident, the car did not overheat again for a "a good year or so."

We conclude that Ed Hicks established as a matter of law that the radiator and its cap were not defective when sold, and there was no contrary evidence that would raise a genuine issue of material fact. *See Abbot Laboratories*, 470 S.W.2d at 643; *Gravis*, 502 S.W.2d at 868. The mere fact that an accident happens to a product, that a car overheats, ejecting water from its radiator as in this case, is not sufficient proof that the radiator or its cap were defective. *Gravis*, 502 S.W.2d at 868–69; *Carroll v. Ford Motor Co.*, 462 S.W.2d 57, 61 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ). We hold that appellant, Juan Carlos Rodriguez, does not have a cause of action for strict products liability

and that summary judgment was also appropriate regarding this claim.

By his final point of error, appellant, Juan Carlos Rodriguez, argues that the summary judgment proof was defective and failed to negate any and all genuine issues of material fact regarding his negligence cause of action to which genuine issues of material fact remain concerning all elements.

There are three elements that must be proven in order to establish liability for negligence: (1) a legal duty owed by one party (the defendant) to another (plaintiff); (2) a breach of that duty; and (3) damages proximately resulting from the breach. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987); *Tanner v. BDK Production Co., Inc.*, 671 S.W.2d 941, 944 (Tex.App.—Corpus Christi 1984, no writ). Duty is the threshold question, and a plaintiff must prove the existence and violation of a duty owed to him by the defendant to establish liability in tort. *Poole*, 732 S.W.2d at 311; *Abalos v. Oil Development Co. of Texas*, 544 S.W.2d 627, 631 (Tex.1976). A retailer has the duty to exercise reasonable care to prevent injury due to a known danger. *Olivarez v. Broadway Hardware, Inc.*, 564 S.W.2d 195, 201 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). A retailer who supplies a product for another to use is subject to liability for physical harm caused by the use of the product in the manner for which and by a person for whose use it is supplied, if the retailer: (1) knows or has reason to know that the product is or is likely to be dangerous for the use for which it is supplied, (2) has no reason to believe that those for whose use the product is supplied will realize its dangerous condition, and (3) fails to exercise reasonable care to inform them of this dangerous condition or the facts which make it likely to be dangerous. *Morris v. Adolph Coors Co.*, 735 S.W.2d 578, 584 (Tex.App.—Fort Worth 1987, writ ref'd n.r.e.); *Olivarez*, 564 S.W.2d at 201.

Appellee, Ed Hicks Imports, had one of its employees, Mr. Cantu, test drive the Buick prior to the time it was placed on the sales lot. According to Mr.

Cantu, the Buick was in good mechanical shape when it was placed on the sales lot. Mr. Castro and Diana test drove the vehicle shortly before its purchase. They noticed no mechanical difficulties. There is no genuine issue of material fact concerning whether appellee, Ed Hicks Imports, knew or had reason to know that the Buick was likely to be dangerous for the use for which it was supplied. *See Morris*, 735 S.W.2d at 584; *Olivarez*, 564 S.W.2d at 201. It is fundamental that in order to recover in a cause of action based upon negligence, more than the accident itself must be proved. *Bass v. General Motors Corp.*, 491 S.W.2d 941, 947 (Tex.Civ.App.— Corpus Christi 1973, writ ref'd n.r.e.). Ed Hicks established as a matter of law that it did not know nor should have known that the product was or was likely to be dangerous for the use for which it was supplied. We have considered all the points of error as well as the cross-point, and they are all overruled. The judgment of the trial court is AFFIRMED.