TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00057-CV







Rehabilitation Facility at Austin, Inc. d/b/a The

Rehabilitation Hospital of Austin, Appellant


v.



Hazel Cooper, Appellee





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 94-05873, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING 






 The Rehabilitation Facility at Austin ("the Hospital") appeals a judgment awarding Hazel
Cooper $1,235,000 plus pre- and post-judgment interest for injuries she sustained while at the Hospital. 
We will affirm the trial-court judgment.


BACKGROUND

 In early May 1992, Hazel Cooper was seventy-one years old and had rheumatoid arthritis
and osteoporosis. At that time, she could stand at a walker, and she could sit for roughly one to two hours
at a time. She could not, however, walk. Her son was able to transport her to the car, and she was able
to ride along with him on afternoon drives. Cooper had already had both hips replaced and thought her
difficulty walking was due to deterioration of her knee joints. On May 20, 1992, she consulted Steven
Tynes, M.D., who opined Cooper was a good candidate for knee-replacement surgery. The next day,
Cooper checked into the Hospital, a rehabilitation facility, to begin therapy to improve her mobility in
preparation for surgery. Over the next several days, two orthopedic surgeons evaluated Cooper and
concluded she was not a good candidate for knee-replacement surgery after all. Dr. Tynes then counseled
Cooper that she would have to establish rehabilitation goals other than regaining the ability to walk.

 On May 31, 1992, while Cooper was still in the Hospital, nurses attempted to transfer her
from a bed to a wheelchair. During the transfer, Cooper experienced great pain, became nauseous and
sweaty, and "blacked out." Cooper remained in her wheelchair for some time and eventually, nurses
transferred her back to her bed. The nurses called Dr. Tynes, and administered oxygen and medication. 
Several hours later, hospital personnel discovered two bones in Cooper's right leg were broken. The next
day, after Cooper complained of persistent pain in her left leg, hospital personnel discovered two bones
in her left leg were also broken. The nurses apparently broke both her legs when they transferred her from
the bed to the wheelchair.

 Cooper spent the next two months in full leg casts. After her legs were broken, Cooper
was unable to stand even with a walker and could not sit for more than twenty minutes at a time. She had
to spend the rest of her time prone and was no longer able to enjoy afternoon drives with her son. She
experienced pain at the fracture sites and took medication to alleviate this problem. One witness testified
that because of Cooper's decreased mobility, her body began to deteriorate more quickly after the
accident. Furthermore, Cooper became depressed after the accident.

 She sued Dr. Tynes for allegedly violating the Deceptive Trade Practices Act. See Tex.
Bus. & Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp. 1998). Specifically, Cooper alleged Dr.
Tynes misrepresented her candidacy for knee-replacement surgery. She also alleged the Hospital and the
nurses negligently caused a different injury, her broken legs. Before trial, Cooper settled with Dr. Tynes
for $15,000. Cooper then amended her pleadings to dismiss her claims against Dr. Tynes, and she non-suited the nurses. 

 She went to trial against the Hospital alone on a negligence theory. The jury returned a
verdict in favor of Cooper for $1,250,000. The Hospital moved to reform the judgment, asserting it was
entitled to a credit for the $15,000 settlement Cooper reached with Dr. Tynes. Cooper agreed to the
credit without conceding the Hospital was entitled to it. The court then rendered judgment for Cooper in
the amount of $1,235,000 plus pre- and post-judgment interest. 

 The Hospital appeals in three points of error. First, the Hospital contends the trial court
erred in refusing to submit a proposed question to the jury. Second, the Hospital argues the evidence is
factually insufficient to support the award of damages. Finally, the Hospital argues the trial court erred by
denying one of its motions for continuance. 


DISCUSSION

Charge Error

 The Hospital asked the trial court to include the following question in the jury charge: 


What percentage of the responsibility that caused the occurrence do you find to be
attributable to each of those named below? The percentage that you find must total 100%. 
Responsibility attributable to any of those named below is not necessarily measured by the
number of acts or omissions found.


a. The Rehabilitation Hospital of Austin

b. Steven Tynes, M.D.


In its first point of error, the Hospital argues the trial court erred by refusing to submit the question. The
Hospital relies on Texas Rule of Civil Procedure 278 and section 33.003 of the Texas Civil Practice and
Remedies Code. See Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.07, 1987 Tex. Gen. Laws 37,
41 (Tex. Civ. Prac. & Rem. Code Ann. § 33.003, since amended). (1) Neither the rule nor the statute
required the court to submit the question under the circumstances of this case. 

 Rule 278 provides that "[t]he court shall submit the questions . . . which are raised by the
written pleadings and the evidence." Tex. R. Civ. P. 278. Cooper's Fifth Amended Petition, the live
pleading, did not allege any wrongdoing on Dr. Tynes's part, certainly not with respect to Cooper's broken
legs. The only legal theory Cooper asserted in her petition was that the Hospital and its employees
negligently broke her legs and caused other damages resulting from her physical injury. The Hospital's
answer does not accuse Dr. Tynes of negligently causing Cooper's accident. Furthermore, the evidence
adduced at trial did not raise the issue. The evidence concerning Dr. Tynes suggested only that he initially
encouraged Cooper to check into the hospital, saw her regularly in consultation for possible knee-replacement surgery, and assisted in treating Cooper after her legs were fractured. The evidence in no way
suggested he caused Cooper's legs to break or that he supervised the nurses who participated in the
botched bed-to-wheelchair transfer. Because neither the pleadings nor the evidence suggested any legal
theory upon which the jury could hold Dr. Tynes responsible for Cooper's broken legs, we hold Rule 278
did not require the trial court to submit the requested question.

 The Hospital also argues section 33.003 of the Texas Civil Practice and Remedies Code
mandated submission of the question. See Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.07, 1987
Tex. Gen. Laws 37, 41 (since amended). Section 33.003 read as follows at the time pertinent to this case: 



The trier of fact, as to each cause of action asserted, shall determine the percentage of
responsibility with respect to:


(1) each claimant;

(2) each defendant; and

(3) each settling person.


Id. The Hospital argues this statute mandated that the jury assess Dr. Tynes's responsibility for Cooper's
broken legs, despite that the live pleadings and the evidence did not allege or suggest that he was
responsible for the broken legs. We disagree. 

 First, the Hospital's interpretation of the statute would effectively require submission of the
issue of a settling person's responsibility even when Rule 278 does not. Nothing in section 33.003
contradicts Rule 278 or indicates that the legislature intended it to supersede Rule 278. We harmonize two
rules of law when possible. See U.S. Resources, Inc. v. Placke, 682 S.W.2d 403, 405 (Tex.
App.--Austin 1984, no writ). Reading the statute in conjunction with Rule 278, the settling person's
liability need be submitted to the jury only if the pleadings and evidence raise the issue of that person's
liability. 

 A 1995 amendment to the statute bolsters our interpretation. Effective September 1, 1995,
the legislature amended the section of the proportionate-responsibility statute entitled "Applicability" to
read:


(a) Except as provided by Subsections (b) and (c) [not applicable here], this chapter
applies to any cause of action based on tort in which a defendant, settling person,
or responsible third party is found responsible for a percentage of the harm for
which relief is sought.


* * *


(f) Nothing in this section shall require a submission to the jury of a question
regarding conduct by any party absent sufficient evidence to support the
submission.


Tex. Civ. Prac. & Rem. Code Ann. § 33.002(a), (f) (West 1997) (emphasis added). Although the
amendment did not apply to this case, it clarifies the legislature's original intent in enacting the statute. The
legislature apparently did not intend to require juries to assess responsibility when none was alleged or
proven. 

 The trial court did not err, therefore, in refusing to submit the requested question. We hold
neither Rule 278 nor section 33.003 of the Texas Civil Practice and Remedies Code required the jury to
assess the responsibility of Dr. Tynes, a settling person, for an injury he was not alleged in the pleadings
and evidence to have caused. Accordingly, we overrule point of error one.


Factual Sufficiency of the Evidence

 The court charged the jury with determining the amount of money that would compensate
Cooper for her (1) physical pain and mental anguish, (2) reasonable expenses of necessary medical care,
and (3) physical impairment. The jury awarded the sum of $1,250,000, which the trial court reduced to
$1,235,000. The Hospital contends in point of error two that the award is not supported by factually
sufficient evidence.

 In determining the factual sufficiency of the evidence, we review all the evidence and set
aside the finding only if the evidence is so weak it renders the finding clearly wrong and unjust. Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986). Our review of the testimony admitted at trial reveals the
following. 

 Before the accident, Hazel Cooper could sit for long periods of time, stand at a walker,
and go on outings with her son. She was motivated to improve her condition and had a positive attitude,
which was essential if any improvement was to take place. She made progress with physical therapy at
her home and she made more progress in the Hospital before the accident. Her prognosis for walking again
was poor, but she still had the ability to do some things for herself and hoped to do more. She clearly could
enjoy her life.

 The evidence supports the conclusion that Cooper's life took a tragic turn for the worse
when the nurses transferred her from her bed to her wheelchair, breaking both her legs in the process. 
First, she experienced extreme pain during the transfer from her bed to her wheelchair. She became
nauseated and sweaty and "blacked out." She was left unattended in the hall and later found slumped in
her wheelchair. Cooper waited several hours for hospital personnel to discover her right leg was broken. 
Furthermore, Cooper suffered until the next day before hospital personnel found her left leg to be broken. 
Clearly Cooper experienced pain and anxiety during this time, especially in light of the fact that she entered
the hospital to gain mobility and independence, not lose it. 

 Furthermore, the record suggests Cooper's ability to do things for herself severely
diminished as a result of her being in full leg casts for more than two months. Her bones and joints
deteriorated more quickly and she was in more pain. She could no longer go on rides with her son, and
she could not even sit upright for more than fifteen to twenty minutes at a time. She became depressed,
gained weight, and spent most of her time on her back. One doctor testified that her decreased mobility
decreased her chance of living as long as she might have had the accident not happened.

 The Hospital suggests the damages are excessive in light of Cooper's limited mobility
before the accident. The Hospital also points to evidence that Cooper did not experience great pain after
the accident because she was given pain medication. This evidence does not outweigh the evidence that
the Hospital's negligence deprived Cooper of what little hope and independence she had before the
accident. In fact, the record supports the conclusion that the ability to stand, sit upright for long periods,
and leave her house were probably more important to Cooper than they would have been to a healthy
person, simply because of her condition. We hold the evidence is factually sufficient to support the award
on the bases of pain and mental anguish and physical impairment alone. We overrule point of error two.


Denial of Continuance

 The parties agreed to set this case for trial the week of August 26, 1996. On August 16,
1996, the Hospital moved for a continuance because its lead counsel was busy representing another client
in a trial in another city. After a hearing, the court denied the motion. The Hospital re-urged its motion on
the day of trial. The court again denied the motion. The Hospital argues in point of error three that the
court erred in denying its motion for continuance.

 In general, absence of counsel is not good cause for a continuance. See Tex. R. Civ. P.
253. The court does have the discretion, however, to allow a continuance if good cause is shown. Id. We
must decide, therefore, whether the court abused its discretion in denying the continuance. State of Texas
v. Crank, 666 S.W.2d 91, 94 (Tex.), cert. denied, 469 U.S. 833 (1984).

 We conclude the court did not abuse its discretion. Although the Hospital's lead attorney
was unavailable for the August 26 setting, another attorney from the same law firm represented the Hospital
at trial. That attorney had signed pleadings and conducted discovery in this case before trial. Nothing in
the record suggests that attorney was incapable of rendering adequate representation. It is not an abuse
of discretion to deny a continuance under these circumstances. See, e.g., Echols v. Brewer, 524 S.W.2d
731, 734 (Tex. Civ. App.--Houston [14th Dist.] 1975, no writ). 

 The Hospital briefly argues the court's denial of the continuance violated the Hospital's
rights under the Fifth Amendment to the United States Constitution. See U.S. Const. amend. V. It is true
that the Fifth Amendment protections extend to civil matters and afford the right to choose a lawyer. See,
e.g., Texas Catastrophe Property Ins. Ass'n v. Morales, 975 F.2d 1178, 1181 (5th Cir. 1992). 
However, the trial court did not infringe on the Hospital's right to choose an attorney when it denied the
continuance. The Hospital was still represented by the same firm, and as noted above, this case was tried
by a lawyer from that firm who had signed pleadings and conducted pretrial discovery. Consequently, we
hold the trial court did not violate the Fifth Amendment, and we overrule point of error three.


CONCLUSION

 Having determined (1) the trial court did not err in refusing to submit the Hospital's 
proposed jury question, (2) the court did not err in denying the Hospital's motion for a continuance, and
(3) the evidence is factually sufficient to support the award of $1,235,000, we affirm the judgment of the
trial court.



 _____________________________________________

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Jones and Kidd

Affirmed

Filed: January 15, 1998

Publish
1. The legislature amended the statute in 1995; the pre-1995 version applied to this case.



 the next day before hospital personnel found her left leg to be broken. 
Clearly Cooper experienced pain and anxiety during this time, especially in light of the fact that she entered
the hospital to gain mobility and independence, not lose it. 

 Furthermore, the record suggests Cooper's ability to do things for herself severely
diminished as a result of her being in full leg casts for more than two months. Her bones and joints
deteriorated more quickly and she was in more pain. She could no longer go on rides with her son, and
she could not even sit upright for more than fifteen to twenty minutes at a time. She became depressed,
gained weight, and spent most of her time on her back. One doctor testified that her decreased mobility
decreased her chance of living as long as she might have had the accident not happened.

 The Hospital suggests the damages are excessive in light of Cooper's limited mobility
before the accident. The Hospital also points to evidence that Cooper did not experience great pain after
the accident because she was given pain medication. This evidence does not outweigh the evidence that
the Hospital's negligence deprived Cooper of what little hope and independence she had before the
accident. In fact, the record supports the conclusion that the ability to stand, sit upright for long periods,
and leave her house were probably more important to Cooper than they would have been to a healthy
person, simply because of her condition. We hold the evidence is factually sufficient to support the award
on the bases of pain and mental anguish and physical impairment alone. We overrule point of error two.