**THE KROGER COMPANY, Appellant,**

v.

**Juan BETANCOURT and Wife, Irene Betancourt, Appellees.**

**No. 14–98–00406–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 24, 1999.

Evelyn T. Ailts, Houston, for appellants.

Donald Hamilton Kidd, Roger D. Townsend, Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices MAURICE E. AMIDEI and HUDSON.

## OPINION

MAURICE E. AMIDEI, Justice.

Kroger appeals from a judgment in favor of Juan Betancourt and his wife, Irene Betancourt, in their personal injury suit. On appeal, Kroger asserts three complaints: (1) the trial court's refusal to submit to the jury the comparative responsibility of a settling defendant; (2) the factual sufficiency of the evidence supporting the jury's finding of negligence; and (3) the admission of expert testimony in light of *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549 (Tex.1995). We affirm.

### Facts

Juan Betancourt was employed as a merchandiser for Coca–Cola. As merchandiser, he delivered Coca–Cola products to grocery stores, including Kroger. As part of his job, Betancourt transported products from his truck to fill display shelves and vending machines, and he stored extra products in the store's back room. For the movement of pallets of products, Kroger provided a straddle jack, or straddle stacker, manufactured by Crown Equipment Corporation. The straddle jack is a heavy machine for lifting or moving pallets. To use the straddle

jack, an individual manually pushes or pulls the straddle jack into position.

On the date in question, Betancourt attempted to move the straddle jack loaded with pallets, but it would not budge. On the third push, Betancourt felt a sharp pain in his back. He received medical attention and was prescribed conservative treatment and physical therapy. After this treatment failed to alleviate his pain, an MRI was performed, which revealed herniated discs at L4–L5 and L5–S1. A laminectomy was performed at the L5–S1 level, but Betancourt continued to experience pain. Additional surgery was recommended, but has not yet been performed. Betancourt receives epidural steroid injections for the pain., but he complains that the continuing pain has led to marital discord. Betancourt was terminated from Coca–Cola because it had no light duty work for him. Despite ongoing efforts, Betancourt has been unable to procure employment since the injury.

Betancourt and his wife and children filed suit against Kroger and Crown, alleging negligence and gross negligence by all defendants, and alleging products liability against Crown. Crown settled with the Betancourts and was dismissed from the lawsuit. The Betancourt children nonsuited Kroger. The remaining claims against Kroger were tried to a jury. The jury found Kroger 87% negligent and Betancourt 13% negligent and awarded Betancourt $650,000.00 and his wife $25,000. The trial court denied Kroger's motion for judgment notwithstanding the verdict and entered judgment on the verdict. Kroger's motion for new trial was overruled by operation of law.

### Submission of Comparative Responsibility of Settling Defendant

■ Kroger claims that submission of the comparative responsibility of the settling defendant, Crown, was mandatory under the plain language of the statute. Betancourt responds that submission of

comparative responsibility was not mandatory because Kroger did not file any pleadings asserting Crown was liable, there was no evidence Crown was liable, and Kroger has not shown that any error, if it exists, was harmful.

Because appellant filed suit in 1993, the current version of section 33.003 does not apply. The version applicable read as follows:

The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility with respect to:

(1) each claimant;

(2) each defendant; and

(3) each settling person.

See Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.07, 1987 Tex. Gen Laws 37, 41 (since amended). Kroger maintains that this section is mandatory, whether a defendant pleads for an election of settlement credit or presents evidence regarding a settling defendant's liability.

■ The filing of a written election is required for entitlement to settlement credit according to the plain language of section 33.014. See Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.10, 1987 Tex. Gen Laws 37, 43 (since amended); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927 (Tex.1998). The election must be timely, meaning it must be filed before the issues are submitted to the trier of fact. See Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.10, 1987 Tex. Gen Laws 37, 43 (since amended). When a party seeks the benefit of a settlement credit, it has the burden of proving it is entitled to an offset. See *Owens–Corning Fiberglas Corp. v. Schmidt*, 935 S.W.2d 520, 522 (Tex.App.— Beaumont 1996, writ denied). A non-settling defendant is only entitled to credit for money recovered from a settling defendant which compensates the plaintiff for damages equally applicable to both defendants. *Id.See also J.D. Abrams, Inc. v. McIver*, 966 S.W.2d 87, 90 (Tex.App.— Houston [1st Dist.] 1998, pet. denied). This is in accord with the Rule 278 re-

quirement that the court submit only the questions raised by the written pleadings and the evidence. *See* TEX.R. CIV. P. 278.

Kroger claims that our decision in *Wynn v. Cohan,* 864 S.W.2d 205 (Tex.App.—Houston [14th Dist.] 1993, writ denied) holds that section 33.003 imposes a mandatory duty on the trial court to submit to the jury the settling defendant's comparative responsibility, even though Kroger did not file a written election and even if there is no evidence to support the submission. We disagree. *Wynn* involved the grant of summary judgment to a non-settling defendant who elected to take a credit for prior settlements and then moved for summary judgment on the ground that the dollar credit exceeded the statutory liability cap contained in TEX.REV.CIV. STAT. ANN. Art. 4590i, § 11.02. 864 S.W.2d at 206. A panel of this court agreed that section 33.003 required a determination of the settling defendant's percentage of responsibility by the jury so that the court could determine if the plaintiff's percentage of negligence barred him from recovery. *Id.* at 207. The court held that the settling defendant "can be included as a defendant for the purposes of determining the combined statutory liability of all defendants in a comparative negligence situation as established under article 4590i, § 11.02." *Id.* at 208. Because there was a question of percentage of liability of all parties to be determined by the fact finder before the nonsettling defendant was entitled to take a credit, this court concluded that the trial court erred in granting the motion for summary judgment. *Id.*

Although *Wynn* does state that section 33.003 calls for a mandatory jury determination of the settling defendants' percentage of responsibility, this statement was made in the context of the facts in that case. In *Wynn,* the non-settling defendant had filed an election for credit under section 33.012(b). *Id.* at 206. Furthermore, *Wynn* was a summary judgment case and the issues of liability and percentage of responsibility had not yet been tried

or submitted to the fact finder. *Id.* Thus, we do not find *Wynn* determinative in this case.

In its reply brief, Kroger advised the court that the Austin Court of Appeals rendered a decision addressing the issue before us in *Rehabilitation Facility at Austin, Inc. v. Cooper,* 962 S.W.2d 151 (Tex.App.—Austin 1998, no writ). In *Cooper,* the plaintiff had settled with her doctor and had non-suited the nurses, but proceeded to trial against the hospital on a negligence theory. *Id.* at 153. After the jury returned a verdict in favor of Cooper, the hospital moved to reform the judgment, asserting it was entitled to a credit for the settlement with the doctor. *Id.* The trial court deducted the amount of the settlement and rendered judgment. *Id.* On appeal, the hospital complained that the trial court refused to submit the requested question of the comparative responsibility of the hospital and the doctor. *Id.* As Kroger argues here, the hospital claimed section 33.003 mandated submission of the question. *Id.* at 154.

The Austin court disagreed on two grounds. First, the court found that section 33.003 does not contradict Rule 278, which requires evidence raising the issue of a party's liability in order for the issue to be submitted to the jury. *Id.* Second, the court found that, despite the mandatory wording of section 33.003, the legislature did not intend to require juries to assess responsibility when none was alleged or proven. *Id.* The court looked at the 1995 amendment to section 33.002, regarding applicability, as evidence of the legislature's intent. *Id.* This amendment added the following sections:

(a) Except as provided by Subsections (b) and (c) [not applicable here], this chapter applies to any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought.

. . . .

(f) Nothing in this section shall require a submission to the jury of a question regarding conduct by any party absent sufficient evidence to support the submission.

TEX. CIV. PRAC. & REM.CODE ANN. § 33.002(a), (f) (Vernon 1997). Although the Austin court admitted the amendment did not apply to the case, as it does not apply to our case, the court found that the amendment clarified the legislature's original intent in enacting the statute. 962 S.W.2d at 154. Because the pleadings did not allege liability on the part of the doctor and no evidence supported the doctor's liability, the Austin court found no error by the trial court in refusing to submit the requested question. *Id.*

■ We find the reasoning in *Cooper* persuasive and we hold that section 33.003 only requires submission of a question on the comparative responsibility of a settling defendant if there are pleadings alleging, and evidence supporting, liability on the part of the settling defendant. In the present case, there is no cross-action against Crown and no written election for settlement credit, so Kroger has no pleading supporting submission of a comparative responsibility issue.

■ Despite a lack of pleading, Kroger asserts there is legally sufficient evidence supporting the submission of Crown's comparative responsibility.[1] The evidence cited by Kroger is as follows: (1) the undisputed evidence showed Crown manufactured the straddle jack in question; (2) the Betancourt's expert, Ralph Cox, testified that a restraining ring, which held the axle in place on the straddle jack, was not

designed to come off; (3) Kroger's maintenance expert testified he had seen a restraining ring come off only three times in his twenty-three years of experience with these machines; and (4) Kroger's engineering expert testified that these type of restraining rings do not come off an a regular basis. Kroger asserts that this evidence shows there was a manufacturing defect in the straddle jack that caused the restraining ring to come off.

■■ To recover for harm caused by an alleged defective and dangerous product, a plaintiff must prove the following elements: (1) the product was defective; (2) the defect existed at the time the product left the hands of the defendant; (3) because of the alleged defect, the product was unreasonably dangerous to the plaintiff; (4) the plaintiff was injured or suffered damages; and (5) the defect was the proximate cause of the injuries. *Rodriguez v. Ed Hicks Imports,* 767 S.W.2d 187, 192 (Tex.App.—Corpus Christi 1989, no writ). The mere fact that an accident happens to a product is not sufficient proof the product was defective. *Rodriguez,* 767 S.W.2d at 192.

The evidence cited by Kroger is as relevant to the Betancourt's claim of negligent maintenance as it is to the claim of defective design. The issue of defective design or manufacture was not fully developed. Instead, the evidence cited merely raises an inference that there may have been a defective design; it does not prove the second element of the products liability cause of action, requiring a plaintiff to show that the defect existed at the time

---

1. The Betancourts claim Kroger waived this complaint because it did not argue in the trial court that there was evidence to support the submission. We disagree. Kroger argued in the trial court, as it argues here, that section 33.003 is mandatory, regardless of the evidence. During the hearing on the motion for new trial, the judge stated his opinion there was no evidence regarding Crown. In response, trial counsel for Kroger argued that they raised evidence regarding Crown when they offered evidence "related to the difficulty

within the machine itself, that it was a difficult thing to move this machine even when it was functioning properly. That is-that relates to the design problem that was inherent in this machine...." The court agreed there was evidence of a defect, but nothing attributing the defect to the manufacturer. Kroger's counsel argued that the evidence submitted was more than a scintilla. Although Kroger's counsel did not point to specific evidence, we hold Kroger brought its complaint to the attention of the trial court.

the product left the manufacturer. Thus, Kroger was not entitled to submission of the issue to the jury.

In conclusion, we find that section 33.003 only requires mandatory submission of the comparative responsibility of a settling defendant if there are pleadings and evidence supporting that submission. Because there is no pleading and no evidence supporting submission of the comparative responsibility of Crown, we find no error by the trial court in refusing to submit the requested question.

## Factual Sufficiency of the Evidence

■ In its second issue, Kroger challenges the factual sufficiency of the evidence supporting the jury's finding that Kroger breached a duty of ordinary care. In deciding a factual sufficiency question, the appellate court considers all of the evidence. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986). The court may set aside the finding only if the evidence is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

■ To prove negligence, a plaintiff must show duty, breach, causation, and injury. *See Firestone Steel Prod. Co. v. Barajas,* 927 S.W.2d 608, 613 (Tex.1996). There are two types of negligence recognized in a premises liability case: (1) those arising from a premises defect; and (2) those arising from activity on the premises. *See Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523, 527 (Tex.1997). Kroger owed a duty to use reasonable care to keep its premises safe for business invitees. *Id.* Kroger does not contest it owed this duty; Kroger complains only that the Betancourts did not establish breach of the duty of ordinary care and causation.

The Betancourts argue that Kroger only challenges the finding of causation based on improper maintenance and inadequate inspection and that Kroger does not challenge its failure to warn or its requiring business invitees to use the straddle jack.

Because the failure to warn and requiring invitees to use the straddle jack are independent grounds to support the judgment, the Betancourts claim we may summarily overrule Kroger's evidentiary challenge. In support of this claim, the Betancourts cite *Gulftide Gas Corp. v. Cox,* 699 S.W.2d 239, 244 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). In that case, the appellant claimed the trial court erred in entering judgment because the jury's damage award on the tort action was based solely on a contract measure of damages. *Id.* at 243. The court determined that, if a contract measure had been applied, the award likely would have been larger. *Id.* at 244. Therefore, the court found that error, if any, in the method of calculation of damages was either harmless or beneficial to the appellant. *Id.* This case does not hold, as the Betancourt's assert, that we may summarily overrule a factual sufficiency issue when an appellant does not mention all of the evidence supporting the jury's verdict. Furthermore, Kroger's brief does challenge the failure to inspect and to warn. Accordingly, we find no waiver.

Our review of the evidence reveals sufficient evidence supporting the jury's finding. Betancourt testified that he recalled two incidents involving the straddle jack before the accident. Betancourt recalled one incident approximately six weeks before his accident, when he advised a Kroger employee that he could not move the straddle jack. Betancourt testified that, later that same day, he observed Kroger employees attempting to fix the axle. Several weeks later, Betancourt again had difficulty moving the straddle jack. He testified he reported this problem to the store manager.

Kroger personnel testified that most of the problems involving the straddle jack were battery problems. No Kroger employees recalled any problems with the wheels. Kroger's records, however, indicated maintenance personnel had installed or re-attached an axle on March 5, 1992,

approximately two weeks before Betancourt's injury. The Kroger maintenance supervisor admitted that Kroger had no regular preventive maintenance program for the straddle jack. The manager of the store where Betancourt was injured testified that all Kroger employees receive an orientation to show them how to use the equipment, but no orientation is provided to non-employees such as merchandisers, who also use the straddle jack.

Betancourt's expert, Ralph Marvin Cox, testified that the accident could have happened as Betancourt described. Cox observed that a restraining ring (also called a snap ring), which holds the axle in place, could come off and allow the axle to work loose. Cox stated that the restraining ring could be knocked off by hitting it against other objects. Cox also noted that the axle could have been installed backwards. Cox testified that regular preventative maintenance would prevent problems with the straddle jack axle. Cox agreed that other factors could cause difficulty moving the straddle jack, including debris on the floor.

Kroger's maintenance supervisor, Ralph Graham, testified there was no ongoing problem with restraining rings coming off. In rebuttal to Cox's testimony, Graham noted that the axle cannot be installed backwards because the pin has a flat side and a rounded side and can only be inserted the proper way. Graham agreed that there had been problems with the wheels jamming, but that this was usually the result of failure of the bearing assembly. Graham could not recall more than 5 instances of restraining rings coming off in his 23 years with Kroger. Kroger purchasing records indicated the purchase of three times as many restraining rings as axles. Graham could not explain the reason for such a large purchase.

Kroger's expert, Thomas M. Grubbs, testified that the accident could not have occurred as Betancourt described. Grubbs observed that simply lifting pallets vertically would not cause the axle to fall out. Grubbs testified that one would have to hammer on a restraining ring to remove it. Furthermore, Grubbs testified that at the time of the injury the position of the straddle jack would have prevented Betancourt from seeing that the restraining ring was missing. Grubbs agreed that debris on the floor could cause great difficulty in moving the straddle jack. Grubbs admitted that one would expect to find debris on the back room floor of a grocery store. Grubbs also agreed that a powered straddle jack would have eliminated the problems associated with pushing the straddle jack.

Although disputed, the evidence supporting the verdict is not so weak as to be clearly wrong and manifestly unjust. The evidence shows the restraining ring could have come off and allowed the axle to dislocate. The evidence also shows the wheel could have been hampered by debris on the floor. The evidence reveals past problems with the axle and restraining rings based on Betancourt's testimony, the Kroger work order of March 5, 1992, showing re-attachment of an axle, and the purchase orders showing acquisition of three times as many snap rings as axles. Finally, there is testimony that Kroger had no regular preventive maintenance program for the straddle jack and did not train merchandisers, such as Betancourt, in proper use of the straddle jack. This is sufficient to show breach of Kroger's duty to use reasonable care to keep its premises safe for business invitees, such as Betancourt. Accordingly, we overrule the factual sufficiency challenge.

### Admission of Expert Testimony

■■■ In its third issue, Kroger claims the trial court erred in permitting the testimony of the Betancourts' expert witness, Ralph Cox, because his testimony was unreliable in light of *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex.1995). In its opening paragraph under this issue, Kroger argues that Ralph Cox was not shown to be qualified to give

an opinion about the straddle jack. In the trial court, however, Kroger's counsel did not object to the admission of Cox's testimony on the ground that he was not qualified. The record shows that Kroger objected on the ground that his opinion was speculative and not reliable. Accordingly, to the extent Kroger challenges Cox's qualifications, we find this complaint waived for lack of objection.

■ The trial court denied Kroger's reliability objection on the ground that *Robinson* only applied to scientific experts. Since the trial court ruled, however, the supreme court has held that *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and Rule 702 require the trial court to evaluate the qualifications and reliability of opinions of *all* experts, not just scientific ones. *See Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 725–26 (Tex.1998). The United States Supreme Court reached the same conclusion in the recent case of *Kumho Tire Co. v. Carmichael*, —— U.S. ——, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

Texas Rule of Evidence 702 permits the testimony of a witness qualified as an expert by knowledge, skill, experience, training, or education to testify on scientific, technical, or other specialized subjects if that testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue. In *Robinson*, the court set forth factors a court may consider in making the threshold determination of admissibility of the testimony of a scientific expert under Rule 702.[2] 923 S.W.2d at 557. In *Gammill*, however, the court recognized that the *Robinson* factors might not be appropriate in assessing the reliability of non-scientific expert testimony. 972 S.W.2d at 726. Indeed, the court

observed that experience alone could provide a sufficient basis for an expert's testimony in some cases. *Id.* To determine if the expert's testimony is reliable, the *Gammill* court applied the test stated in *General Electric Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997): "whether 'there was simply too great an analytical gap between the data and the opinion proffered'." 972 S.W.2d at 727 (citing *Joiner*, 118 S.Ct. at 519).

In *Gammill*, the plaintiff's expert, Dr. Huston, was found to be qualified and offered his opinion that the child, who had died from injuries received in a vehicle collision, had been wearing her seat belt but the design defects in the seat belt's webbing loop and buckle release allowed the child's fatal injuries to occur. *Id.* at 717. The supreme court found this opinion unreliable in the following way:

> Huston based his opinion that Jaime was wearing her seat belt on "gliding abrasions found on her body, markings on the shirt she was wearing, apparent shirt fibers observed in the seat belt webbing, marks on the seat belt webbing, and the impact location on the driver's seat back". Huston did not specify the gliding abrasions on Jaime's body, or his basis for attributing them to the seat belt. He made no attempt to explain why the markings on Jaime's shirt are distinctive or how they are typical of seat belt loading. He has not concluded that fibers from the shirt Jaime was wearing were in fact in the seat belt webbing, only that "apparent shirt fibers" were present. Nor has Huston explained or excluded other possibilities for the presence of any such fibers. From his testimony, the significance of any dimple or warping in

**2.** These factors are as follows: "(1) the extent to which the theory has been or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and/or publication; (4) the technique's potential rate of error; (5) wheth- er the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the nonjudicial uses which have been made of the theory or technique." *Robinson*, 923 S.W.2d at 557 (citations omitted).

Jaime's shoulder belt is unclear, and Huston has not explained why Jaime's presence on the floor between the seats after the accident is not at least as consistent with her not having worn her seat belt as with his opinion that she was wearing it. Regarding defects in the restraint system design, Huston testified that the belt could loosen and that the position of the push-button release was such that it could accidentally be bumped in a collision. Assuming Huston was correct, he has offered nothing to suggest that what he believes *could have* happened actually *did* happen. His opinions are little more than "subjective belief or unsupported speculation."

*Id.* at 727–28 (footnote citations omitted).

Kroger argues that Cox's opinion is unreliable because he has never before analyzed this or any other straddle jack, his experience is almost exclusively with other types of warehouse loaders, he never performed a reconstruction of the accident and could not recall operating the straddle jack, he relied primarily on Betancourt's statement, and he did not know the history of the straddle jack in question or the design of the particular retaining ring alleged to have come off.

By stating that the six *Robinson* factors do not apply to non-scientific experts, the *Gammill* court recognized that, in non-scientific cases, it is impossible to set out specific criteria for evaluating the reliability of expert testimony. The court noted that, in some cases, past experience may be sufficient. 972 S.W.2d at 726. The court did not state that past experience was an absolute requirement because this would create an impossible burden for plaintiffs attempting to seek redress for injuries caused by equipment or procedures that have received little or no study.

The equipment in this case was a straddle jack and neither the plaintiffs' expert nor the defendant's expert testified to experience with this equipment. Both sides' experts were engineers with experience in warehouses and mechanical equipment in general. Furthermore, we believe past experience with straddle jacks relates more to the expert's qualifications, unchallenged here, than to the reliability of the expert's conclusions.

Because Betancourt had already settled with Crown, there was no need to study the design of the retaining ring, other than to review the operating manual as Cox testified he did. The only part of the straddle jack Cox studied was the wheel and axle assembly. This portion of the straddle jack is very simple, consisting of a wheel, an axle pin that fits into two holes in each leg of the straddle jack, and a restraining or snap ring that holds the axle pin in place. As for history of the straddle jack in question, Cox reviewed deposition testimony and documentation regarding repairs to the straddle jack.

Cox testified he looked at photographs of the straddle jack taken immediately after the lawsuit was filed and visually inspected the straddle jack four years after the accident. He stated that he could see no appreciable difference between the condition of the straddle jack in the photo and the condition he personally viewed. As the basis of his opinion, Cox testified he reviewed a number of depositions and the operating and maintenance manual for the straddle jack, made a personal inspection of the straddle jack and the physical facility where it was located, and had extensive discussions with Betancourt.

Cox testified that the straddle jack retaining rings could come off and allow the axle to dislocate, which led to Betancourt pushing the straddle jack and injuring his back. Cox testified the retaining rings could be knocked off when the straddle jack hit a wall or a stack of pallets, even though it has a flat design to prevent this from happening. Because the straddle jack is Kroger's, Cox testified that it was Kroger's responsibility to ensure the retaining ring was in place. Cox reasoned that a regular preventive maintenance program would have prevented Betancourt's

injury. Cox also testified that debris on the floor would cause difficulty moving the straddle stacker.

Because Kroger's records showed at least one re-attachment of an axle and the purchase of more restraining rings than axles, we find there is not too great an analytical gap between the data and Cox's conclusions, including the following: (1) the restraining rings come off and have to be replaced; (2) when the restraining rings come off, the axle pin can work its way out of the hole in which it sits; (3) when the axle is not in the proper location, the wheel will not move as it should; (4) Kroger could have, but did not, perform regular preventive maintenance to ensure that the restraining rings were properly attached.

■■■■ Although we find no error by the trial court in admitting Cox's testimony, we also find that, even if it had been error, Kroger has not shown that the admission of this testimony probably resulted in an improper judgment. To obtain reversal of a judgment based on error in the admission of testimony, an appellant must show that the trial court's ruling probably caused the rendition of an improper judgment. *See* Tex.R.App. P. 44.1; *Southland Lloyd's Ins. Co. v. Tomberlain,* 919 S.W.2d 822, 827 (Tex.App.—Texarkana 1996, writ denied). In making this determination, we must review the entire record. *See City of Brownsville v. Alvarado,* 897 S.W.2d 750, 754 (Tex.1995). Reversible error usually does not result unless the appellant can demonstrate that the whole case turns on the particular evidence admitted. *See Church & Dwight Co., Inc. v. Huey,* 961 S.W.2d 560, 570 (Tex.App.—San Antonio 1997, pet. denied).

To demonstrate that the evidence probably caused rendition of an improper judgment, Kroger observes that Cox was Betancourt's only witness, that we cannot underestimate the impact of an expert's testimony, and that the jury undoubtedly placed a great deal of weight on his testimony. While it may be true that juries

are impressed by expert testimony, in this case there is evidence other than the testimony of Cox supporting the jury's finding of causation. The Kroger maintenance supervisor testified that Kroger had no regular preventive maintenance program for the straddle stacker and, even though Kroger allows non-employees to use this machine, no one checks its condition before these personnel use it. A work order dated two weeks before Betancourt's injury indicated an axle was re-installed on the straddle stacker. Kroger's expert testified that, although it would be unusual, a restraining ring could come unattached. This expert further testified that the straddle jack could jam if the wheel met with debris on the floor. This expert conceded that Kroger should know debris is likely to accumulate on the back room floor. The co-manager for the Kroger store where the injury occurred testified that maintenance work orders were signed by managers to show that work was done in that store, but no one inspected the equipment to ensure that the repair was made. Kroger purchasing records reflected the purchase of three times as many restraining rings as axles.

Based on the entire record, the jury could have concluded that Kroger was aware of a problem with the restraining rings and performed no regular maintenance to prevent the problem. Accordingly, we find that Kroger has not demonstrated that the admission of Cox's testimony probably resulted in rendition of an improper judgment. Even when Cox's testimony is not considered, there is more than sufficient evidence to support the jury's finding that Kroger was negligent.

**Conclusion**

As to issue one, we find that section 33.003 only requires mandatory submission of the comparative responsibility of a settling defendant if there are pleadings and evidence supporting that submission. Because there is no pleading and no trial by

consent of the issues, Kroger was not entitled to submission of the comparative responsibility of Crown.

As to issue two, we hold that the evidence is factually sufficient to show breach of Kroger's duty to use reasonable care to keep its premises safe for business invitees, such as Betancourt.

Finally, as to issue three, we find that the supreme court's holding in *Gammill* requires a trial court to perform a *Robinson*-type review of any expert's qualifications and a determination whether the testimony is relevant and reliable. Applying the *Gammill* reasoning, we hold that Kroger has not shown the trial court abused its discretion in admitting the testimony of Betancourt's expert witness nor that the admission of this testimony probably resulted in an improper judgment.

Accordingly, we affirm the trial court's judgment.