GULFTIDE GAS CORP., Appellant,

v.

Edwin L. COX and Buttes Resources Co., Appellees.

No. 01–84–00608–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 29, 1985.

Rehearing Denied Oct. 17, 1985.

Jay S. Siskind, K. Ray Campbell, Campbell, Athey & Zukowski, Houston, for appellant.

Charles B. Kirklin, Kirklin, Boudreaux & Joseph, Ann Marie Waters, Kirklin, Boudreaux & Joseph, Houston, for appellees.

Before EVANS, C.J., and COHEN and DUNN, JJ.

## OPINION

COHEN, Justice.

Appellees sued appellant alleging breach of contract, fraud, and breach of fiduciary duty. In accordance with the jury's verdict, judgment was rendered against appellant for actual damages of $383,077.32, plus pre-judgment interest, and punitive damages of $1,149,231.96.

The facts are not in dispute. In June 1977, appellees, who were producers of natural gas, contracted with appellant, a gas transmission company, for appellant to purchase gas at a base price of $1.90/per thousand cubic feet, hereafter called "mcf." Appellant represented to appellees that it had an agreement, which was not yet signed, to resell the gas to Allied Chemical Corp. for $1.95/mcf. Although appellant and Allied had not signed a contract, their contract was to be attached, on execution, as an exhibit to the contract here at issue. The contract herein provided:

3. On the first day of the second Accounting Period and of each Accounting Period thereafter, the price provided in subparagraph a. above [$1.90/mcf] shall be escalated by three cents (3.0) per mcf, such first day being hereafter referred to as the Date of Escalation.

4. Buyer's Gas Sales Contract for this gas (attached hereto as Exhibit "C") provides that in lieu of the escalation described in Paragraph 3 above, Buyer shall have the right to annually redetermine its sales price. Should [appellant] redetermine his gas sales contract, it hereby agrees that eighty percent of any increase above its then current price resulting from such redetermination shall be payable to [appellees].

The contract between appellant and appellees was executed on or about July 7, 1977. The contract between appellant and Allied was signed on or about October 21, 1977. The first deliveries of gas occurred in December 1977. The price that appellant received from Allied for gas purchased from appellees was not $1.95/mcf, as represented, but $2.05/mcf, in accordance with the October 21, 1977, contract between appellant and Allied. When appellant and appellees entered their contract, a form contract without prices stated was attached as an example of the contract that appellant expected to enter with Allied, purportedly at the price of $1.95/mcf. However, when appellant actually signed its contract with Allied some 3½ months later, the price was $2.05/mcf.

Appellant never informed appellees of this fact. Instead, appellant furnished appellees what purported to be its contract with Allied, but which, in fact, misstated the sale price to Allied as being $1.95/mcf when, in fact, the true price of gas sold to Allied was $2.05/mcf. Appellant retained the entire difference in price between $1.95/mcf and $2.05/mcf, forwarding none to appellees. This was found by the jury to be a fraud, a breach of contract, and a breach of fiduciary duty. In addition, the jury found that appellant's representations made before it entered the July 7, 1977, contract with appellees were fraudulent. The jury awarded damages against appellant for selling appellees' gas for $2.05/mcf while falsely representing to appellees that it was being sold for $1.95/mcf.

We are faced at the outset by a challenge to our jurisdiction raised in point of error five, in which appellant contends that the district court erred in entering judgment before the Federal Energy Regulatory Commission ruled on its petition pending before the Commission. Appellant argues that the trial court should have declined to enter judgment until the Commission exercised its "primary jurisdictional responsibility of determining whether the jury's award in this matter is commensurate with the uniform regulatory policies established by the [Natural Gas Policy Act] and its implementing regulations." The trial court overruled appellant's request and entered judgment without waiting for a determination by the Commission.

We first observe that appellant does not contend, and the record does not reflect, that the jury's award based upon a $2.05/mcf price would be in violation of price ceilings set by federal law. We further note that the establishment of federal ceiling prices did not preempt the contractual power of private parties, as long as the selling price did not exceed the ceiling prices. *Pennzoil Co. v. Federal Energy Regulatory Commission*, 645 F.2d 360, 381 (5th Cir.1981). Further, the federal regulatory scheme does not generally preempt the authority of state and federal courts to determine contractual authority for contract escalations in intrastate contracts, such as the one here involved. "The federal scheme of regulation under the NGA and NGPA is limited in its displacement of state regulatory authority." *Id.* at 385. We conclude that we have jurisdiction to decide this case and overrule the fifth point of error.

The first point of error asserts that the district court erred in entering judgment, because the jury's answers to Special Issues 1, 3, and 6 are inconsistent. Appellant asserts that the jury found that the base price of the gas sold to Allied was $1.95/mcf, and in addition, also found that the base price was not $1.95/mcf. The special issues in question stated:

SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that the $2.05 price set out in defendant's Exhibit No. 7 resulted from a redetermination?

ANSWER: WE DO

. . . . .

SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence

(a) that Gulftide represented to the plaintiffs that it had an agreement to resell Plaintiffs' gas at a base price of $1.95/mcf?

ANSWER: WE DO

(b) that that representation was false?

ANSWER: WE DO

(c) that Gulftide knew the representation was false when it was made?

ANSWER: WE DO

(d) that Gulftide made the representation with intent to induce plaintiffs to rely and act upon it?

ANSWER: WE DO

(e) that the representation involved a material existing fact as opposed to a minor or trivial detail?

ANSWER: WE DO

(f) that the plaintiffs entered into a contract with Gulftide in reliance on Gulftide's representation?

ANSWER: WE DO

(g) that the representation of Gulftide was a proximate cause of injury, if any, to the plaintiffs?

ANSWER: WE DO

. . . . .

SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence

(a) that before initial deliveries of gas, Gulftide represented to the Plaintiffs that it had a contract with Allied, to be attached as Exhibit "C" to Plaintiffs' Exhibit 1, for resale of gas to Allied at a base price of $1.95/mcf?

ANSWER: WE DO

[The jury further found that the representation was known to Gulftide to have

been false when made, was made with intent to induce appellees to act upon it, involved a material fact, that plaintiffs relied on the representation and that the representation proximately caused their injury].

Appellant contends that if the $2.05 price resulted from a "redetermination," the base price must only have been $1.95. However, in Special Issues 3 and 6, the jury found that the $1.95 base price was a misrepresentation. According to appellant, this implies that the base price was in fact $2.05.

■■■ The question for decision is not whether the findings are inconsistent, or even irreconcilable. The issue is whether the conflict, if any, is fatal to the entry of the judgment. *Bay Petroleum Corp. v. Crumpler,* 372 S.W.2d 318, 319 (Tex.1963); *Little Rock Furniture Manufacturing Co. v. Dunn,* 148 Tex. 197, 222 S.W.2d 985 (1949). A conflict is fatal only if the answer to one issue, considered along with other nonconflicting special issues, would support a verdict for the defendant, whereas the conflicting issue, similarly considered, would support a verdict for the plaintiff. *Id.* at 319. *See also Varela v. Safeway Stores, Inc.,* 550 S.W.2d 357 (Tex. Civ.App.—El Paso 1977, no writ). It is questionable whether these issues are in conflict, or in irreconcilable conflict, but we need not decide that in order to rule. This is so, because appellant could not have received a favorable verdict under Special Issue 1, 3, or 6. The verdict on all of these issues favored appellees. Thus, even if these issues were in irreconcilable conflict, the conflict would not be fatal to the entry of the judgment.

The first point of error is overruled.

The second point of error contends that the trial court erred in entering judgment, because the jury's damage award on the tort actions was based solely on the measure of damages used in breach of contract cases.

The damage award represented eight cents per mcf, which constituted 80% of the difference between $1.95/mcf and $2.05/mcf. That amount, at least, would be due appellees if appellant had breached its contract by secretly charging Allied $2.05/mcf.

The damage award was also based on fraud in the inducement and performance of the contract. The jury found that appellant falsely and knowingly represented that it had an "agreement" to resell the gas at a base price of $1.95, and that it falsely and knowingly represented that it had a "contract" for $1.95, when the contract price in effect with Allied at all relevant times was $2.05/mcf. Thus, the measure of damages would be the difference between the value received by appellees under the agreement, $1.90/mcf, and the value appellees parted with, or, stated differently, what appellees would have sold the gas for had they known that the actual resale price was to be $2.05/mcf. *See Success Motivation Institute, Inc. v. Lawlis,* 503 S.W.2d 864, 867 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.).

Michael Moore, appellees' representative at the contract negotiations, testified that appellees expected appellant to realize a three to five cent per mcf profit on its initial resales to Allied. He testified as follows:

Q: And was the Exhibit C to contain Gulftide's resale price of $1.95?

A: Yes, it was. That was the understanding.

Q: Did you rely on that representation in entering into the contract—

A: Completely.

Q: —with Gulftide?

A: Completely.

Q: I want to explore in further detail the importance of that representation. You have already told the Jury that it was important because you were going to get 80 percent of the escalation?

A: Yes.

Q: Were there other reasons why that was important in your negotiations with Gulftide?

A: Yes. We were considering laying the line ourselves to Lo-Vaca, and basically,

one of the main reasons I came down to see Mr. Hancock was to kind of see what type of fellow he was. And he had a nice office and he told me he had been in business for some 15 years. And I recall we specifically mentioned the fact that we were looking at just somewhere between three cents and a nickel this first year, as far as his portion for laying the pipeline.

And he pointed out he was looking at buying more gas down there and knew how to lay a line very expensively [sic]. And he could make it on that, so that wasn't a major problem.

Q: By the way, when we're talking about $1.90 and $1.95 and three cents and a nickel, are we talking about rates based on the delivery per Mcf?

A: The base price was $1.90; however, if more gas flowed, the higher the price could get. If a certain amount flowed, it could get up to $1.92. That was the maximum we would get. Of course, if no gas flowed, no payment would be made also.

Q: The more Gulftide would receive from their purchase?

A: Yes, more revenue that they would receive.

. . . . .

Q: (By Mr. Parsons) Well, if Mr. Hancock told you he was going to resell the gas for $2.05, would you have sold it to him for that base price of $1.90 per Mcf?

A: Certainly not.

. . . . .

Q: (By Mr. Parsons) Was the representation important to Cox and to Buttes in setting their base price of $1.90?

A: Certainly.

Q: And important in that, if the resale price was going to be $2.00 or $2.05 per Mcf, that you would want to set a higher base price?

A: That's correct.

Q: All right. Was it also important to know what the spread would be between $1.90 and $1.95 per Mcf, important to you?

A: Yes.

Q: Why?

A: We needed to know that Mr. Hancock could make a profit. That was part of my reason for visiting with him, to see, you know, his experience. He assured me there would be no problem being able to do all right on that. That he had a small company and that he could "poor boy" the line—I believe he said—put it in cheaper than anybody else. And he took pride in doing that.

Q: And he specifically told you that—

A: Yes.

Q: —these prices were economically feasible to him?

A: Yes.

Q: Did he ever tell you subsequently that those prices weren't economically feasible to him and try to come back and renegotiate the contract with you?

A: No, never did.

This testimony indicates that if appellees had known their gas would be resold at $2.05/mcf, they would have sold it for no less than $2.00/mcf in order to give appellant his three to five cent per mcf profit margin. Appellees were damaged by losing the 10 cent per mcf difference between $1.90/mcf and $2.00/mcf. This is a greater amount than the award made by the jury, which was based on 80% of the difference between $1.95/mcf and $2.05/mcf, i.e., eight cents per mcf.

■ Since the evidence was sufficient to support an award at least equal to that made by the jury, the error, if any, in calculating the measure of damages was either harmless or beneficial to appellant. *See Rowan Companies, Inc. v. Transco Exploration Co.*, 679 S.W.2d 660 (Tex.App. —Houston [1st Dist.] 1984, writ ref'd n.r. e.). Cox was induced to agree to a base price of $1.90/mcf by appellant's false representation that it was reselling to Allied for $1.95/mcf. Appellees agreed to give, and appellant agreed to accept, a maximum profit margin of five cents per mcf on the initial base price. Appellees never agreed

to a 15 cents per mcf margin, the difference between $1.90/mcf and $2.05/mcf.

■ Appellant further argues that punitive damages cannot be recovered in the absence of an award for actual damages sounding in tort. The argument does not challenge the sufficiency of the evidence supporting the jury's finding of fraud. Rather, it challenges the sufficiency of the evidence of actual damages based upon tortious conduct, as distinguished from damages for breach of contract. The jury found that appellant was guilty of fraud and breach of fiduciary duty. The quoted testimony of Michael Moore established that a profit margin of three to five cents in the first year was intended and was a material factor inducing appellees' agreement to a base price of $1.90/mcf. Moore's testimony established that appellees would not have agreed to a price of $1.90/mcf, but would have charged a higher price for their gas had they known that it was to be resold for $2.05/mcf. This established a basis for an award of actual damages in tort. Punitive damages are allowable where a distinct tort is alleged and proved. *K.W.S. Manufacturing Co. v. McMahon*, 565 S.W.2d 368, 372 (Tex.Civ. App.—Waco 1978, writ ref'd n.r.e.).

The second point of error is overruled.

The third point of error contends:

The trial court erred in basing its judgment on the jury's answer to Special Issue No. 1, if it did, because the definition of "redetermination" is a matter of law and there cannot be a redetermination until the first deliveries of gas have occurred.

The contract provided:

3. On the first day of the second Accounting Period and of each Accounting Period thereafter, the price provided in subparagraph a. above shall be escalated by 3.0/mcf, such first day being hereafter referred to as the Date of Escalation.

4. Buyer's gas sales contract for this gas (attached hereto as Exhibit "C") provides that in lieu of the escalation described above buyer shall have the right to annually redetermine its sale price. Should buyer redetermine his gas sale contract, it hereby agrees that 80% of any increase above its then current price resulting from such redetermination shall be payable to seller.

"Accounting period" is defined in the contract as the period beginning on the first day of initial deliveries of gas and continuing for 12 months.

■ Appellant contends that the contract contemplated a redetermination only at the end of one year of initial deliveries and that, therefore, setting the price to Allied at $2.05/mcf at the very beginning of the contract was not a "redetermination," as defined in the contract. We agree that the contract is clear and unambiguous in its provision that a redetermination shall occur only after one year from the first gas deliveries. Thus, the question submitted to the jury in Special Issue 1 was properly a question of law for the trial court. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968); *Community Development Service, Inc. v. Replacement Parts Manufacturing, Inc.*, 679 S.W.2d 721, 724 (Tex.App.—Houston [1st Dist.] 1984, no writ). This does not require reversal of the judgment, however, because the issue of redetermination related only to the cause of action for breach of contract. The jury's findings of fraud in Special Issues 3 and 6 support the trial court's judgment, standing alone. The judgment awards punitive damages, as well as actual damages, and thus reflects recovery in tort, either instead of in addition to recovery for breach of contract. In view of the fact that the trial judge awarded punitive damages, which can only be based upon actual damages sounding in tort, we conclude that the trial court's award of actual damages was based in tort. This conclusion is supported by the fact that the judgment does not award attorney's fees, even though the jury found for appellees on that issue, and appellees moved for inclusion of attorney's fees in the judgment. If the court had rendered a judgment based on breach of contract, attorney's fees would

**246**

doubtless have been included. Tex.Rev. Civ.Stat.Ann. art. 2226 (Vernon Supp.1985).

 The trial court has the authority to disregard a special issue that has been rendered immaterial by other findings. *C & R Transport, Inc. v. Campbell,* 406 S.W.2d 191, 194 (Tex.1966); *Bluebell, Inc. v. Isbell,* 545 S.W.2d 563, 566 (Tex.Civ. App.—El Paso 1976, no writ); *Young v. Kilroy Oil Co.,* 673 S.W.2d 236, 247 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Special issue one is immaterial in light of the other jury findings and the judgment entered. The same is true of the statement in the judgment that the $2.05/mcf price resulted from a redetermination. Such language is surplusage and does not negate a recovery based on fraud. Any error in submitting Special Issue 1 to the jury was, therefore, harmless.

Point of error three is overruled.

The fourth point of error asserts that: The trial court erred in basing its judgment, if it did, on defendant's alleged breach of fiduciary duty because there was no evidence or insufficient evidence to show that defendant had a fiduciary duty over and above its contractual obligations.

Appellant argues that its obligations to appellees were solely contractual and that there was no other relationship between them that would impose a fiduciary duty.

 As we have held in overruling point of error three, the judgment was based on fraud, a theory separate and apart from breach of fiduciary duty. Thus, any error by the trial court in basing its judgment also upon a breach of fiduciary duty did not affect the judgment and was harmless.

Point of error four is overruled.

 In the sixth point of error, appellant contends that the court erred in awarding damages in the amounts awarded, because appellees miscalculated their damages, and there was no evidence or insufficient evidence for an award in the amounts of the judgment.

We have reviewed the portions of the statement of facts cited by appellant in its brief in support of this ground of error. None contain clear admissions of significant errors. While some arithmetic errors were admitted by appellees' witness, Mr. Broussard, he testified that he was able to reconstruct the summary to reflect the proper figure. His supposed error in calculating amounts due based on less than a 30-day measurement period was never conceded to be error and was only shown to have occurred in the 28 day month of February.

The amount of damages was a fact issue, and the deficiencies alleged affected only the weight of the evidence. They were not so great as to destroy totally its probative value.

The sixth point of error is overruled.

The judgment of the district court is affirmed.