**Affirmed in Part as Modified, Reversed and Remanded in Part, and Memorandum Opinion filed February 28, 2017.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-15-00933-CV

---

### PM HOLDINGS, LLC, ROBERT MIZE, AND DAVID PIPER, Appellants

### V.

### JONG SONG, Appellee

---

**On Appeal from the County Civil Court at Law No. 3
Harris County, Texas
Trial Court Cause No. 1067143**

---

### M E M O R A N D U M   O P I N I O N

This is a forcible detainer (eviction) action originally brought by Jong Song in the justice court and tried de novo in the county court. PM Holdings, LLC, Robert Mize, and David Piper (the "PM Parties") now appeal the judgment of the county court in favor of Song. After a bench trial, the county court awarded Song possession of the property, damages, attorney's fees, and costs. On appeal, the PM Parties challenge the legal and factual sufficiency of the evidence to support the

county court's judgment.  We affirm in part as modified and reverse and remand in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Due to the limited evidence introduced at trial, we utilize the clerk's record to supplement the background facts when those facts do not appear to be in dispute.  Mize and Song entered into a commercial lease related to real property at 2003 Union Street, Houston, Harris County, Texas.  Mize's monthly rent under the lease was $3,750.  The original term of the lease was from December 1, 2008 to November 30, 2013.  The lease contained a commercial lease expense reimbursement addendum requiring the tenant to pay its pro rata share (100%) of ad valorem taxes on the property monthly.  The lease was renewed and Mize assigned the lease to Piper or PM Holdings.[1]  Piper is the managing partner of PM Holdings.

Song, through counsel, sent a letter to Mize and Piper regarding a "notice of increase[d] payment and demand for payment - $26,250.00 plus late fees" notifying them of default under the lease on May 11, 2015.  The letter stated that seven months' rent was past due and late fees totaling $1,312.50 were owed as a result.  Further, the letter indicated $17,658 in ad valorem taxes on the property for the years 2013 and 2014 had just been paid by Song.  The letter increased rent by $1,471.50 a month unless Song was reimbursed in full for the ad valorem taxes.  The letter provided three days to become compliant under the lease.  Piper testified he requested an accounting which he did not receive.

A "notice of lease termination and notice to and [sic] vacate" was sent by Song, through counsel, to Mize and Piper on May 20, 2015.  The letter indicated

---

[1] The assignment is not in the record and the testimony is unclear as to the identity of the assignee.

the account remained in default and Song was terminating the lease. Three days were allowed to vacate the premises. Subsequently, Song filed a forcible detainer action in the justice court. While that action was pending, Piper presented a $26,250 check to Song's counsel on June 23, 2015. Piper was under the impression that the matter was resolved, but he was not provided with a settlement agreement. The forcible detainer action was dismissed after the check was tendered. Song cashed the check.

Song, through counsel, mailed a "demand for payment - $5,221.50 plus late fees" to the PM Parties on June 23, 2015.[2] The letter indicated the base monthly rent of $5,221.50 for June 2015 had not been paid. It also indicated $261.07 in late fees was due as a result of the unpaid rent. The letter stated failure to make payment of $5,482.57 within three days would constitute default under the lease.

A second "notice of lease termination and notice to and [sic] vacate" was sent to the PM Parties on June 27, 2015. The letter indicated the tenant was in default for failure to pay the amount past due within the time specified by the June 23, 2015 letter. The letter provided eleven days to vacate the premises.

Song filed a second forcible detainer action in the justice court against the PM Parties on July 9, 2015. Song sought possession of the property, along with past due rent, attorney's fees, costs, and interest. The justice court signed a judgment of eviction in favor of Song on August 6, 2015. The justice court also awarded attorney's fees and court costs to Song. The PM Parties appealed the justice court's judgment to the county court.

The PM Parties filed a general denial in the county court. After a bench

---

[2] The June 23, 2015 letter was not introduced into evidence during the trial, but is in the clerk's record. We include reference to this letter for background purposes only and express no opinion as to whether any evidence related to this letter was properly before the county court.

trial, the county court signed an order granting eviction on October 19, 2015. The county court awarded Song $25,612 in damages, $6,700 in attorney's fees, and $836.53 in costs. The county court did not issue findings of fact or conclusions of law.

The PM Parties superseded the judgment by filing a $27,729.31 cash deposit with the Harris County clerk. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

Where the trial court does not file findings of fact and conclusions of law, we imply all findings necessary to the court's judgment, if supported by the evidence. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). We review the PM Parties' complaints presuming all findings of fact and conclusions of law were made in favor of Song. We will affirm the judgment if it can be upheld on any legal theory supported by the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).

When the appellate record includes the reporter's and clerk's records, an appellant may challenge implied findings by contesting the legal and factual sufficiency of the evidence in the record to support them. *See BMC Software Belg.*, 83 S.W.3d at 795. We apply the same standards of review as those applied to the review of jury findings or a trial court's findings of fact. *RR Maloan Investments, Inc. v. New HGE, Inc.*, 428 S.W.3d 355, 359 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding, making every reasonable inference to support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822

4

(Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict at issue. *Id.*

When an appellant challenges the legal sufficiency of the evidence on a matter for which he did not have the burden of proof, he must demonstrate on appeal that there is no evidence to support the adverse findings. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Foley v. Capital One Bank, N.A.*, 383 S.W.3d 644, 646 (Tex. App.—Houston [14th Dist.] 2012, no pet.). A "no evidence" challenge will be sustained when the record discloses one of the following situations: (a) a complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014). If the factfinder would have to guess whether a vital fact exists, the evidence does not exceed a scintilla. *Foley*, 383 S.W.3d at 647.

In reviewing a factual sufficiency challenge, we consider and weigh all the evidence in a neutral light and may set aside the finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Green v. Alford*, 274 S.W.3d 5, 23 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (en banc).

### B.    Forcible Detainer

Forcible detainer is committed by a person who refuses to surrender possession of real property on demand if the person is a tenant or subtenant who willfully and without force holds-over after termination of their right of possession.

*See* Tex. Prop. Code Ann. § 24.002(a)(1) (West 2014). The forcible detainer action is designed to be a speedy, simple, and inexpensive means to regain possession of property. *Salaymeh v. Plaza Centro, LLC*, 264 S.W.3d 431, 437 (Tex. App.—Houston [14th Dist.] 2008, no pet.). As forcible detainer is a statutory cause of action, strict compliance with the statute is required. *Geters v. Baytown Housing Authority*, 430 S.W.3d 578, 584 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

### C.    Default and Notice of Default

The PM Parties contend that Song failed to offer legally and factually sufficient evidence to establish that they were in default under the lease and that Song sent proper notice of default.[3] A demand for possession must be made in writing and comply with the requirements of Tex. Prop. Code § 24.005. Tex. Prop. Code Ann. § 24.002(b). Under Section 24.005, the landlord must give a tenant who defaults at least three days' written notice to vacate before filing a forcible detainer suit, unless the lease provides for a shorter or longer period. *See id*. § 24.005.

The lease in this case recognizes two types of notice relevant here: a notice of non-compliance, which is required in certain circumstances before a tenant will be in default; and a notice to vacate. The lease states a tenant's right to occupy the

---

[3] Section 24.007 of the Property Code currently states "[a] final judgment of a county court in an eviction suit may not be appealed on the issue of possession unless the premises in question are being used for residential purposes only." Tex. Prop. Code Ann. § 24.007 (West Supp. 2016). However, at the time final judgment was signed by the county court, Section 24.007 read "[n]otwithstanding any other law, an appeal may be taken from a final judgment of a county court, statutory county court, statutory probate court, or district court in an eviction suit." Tex. Prop. Code Ann. § 24.007(b) (West 2014). The statutory language governing an appeal, when the judgment was signed in this case, did not limit jurisdiction to issues of possession solely in regards to residential premises. Accordingly, we have jurisdiction to address the issues the PM Parties raise which are related to the issue of possession.

property can be terminated with three days' written notice to vacate if the tenant is in default. A tenant is in default under the lease "[i]f Landlord does not actually receive at the place designated for payment any rent due under this lease within 5 days after it is due." Unlike a tenant's other failures to comply, the lease does not require any notice of non-compliance before a defendant will be in default for failure to timely pay rent.[4]

The PM Parties contend that the evidence does not establish they failed to pay rent in June. Song argues the county court could have concluded June rent was not timely paid. Song presented evidence at trial that the last payment received from the PM Parties was $26,250. The evidence established this payment was given to Song on June 23, 2015. Song testified she had not received any payment since that date, and her accounts payable ledger showed rent was due for June.[5] Piper testified his understanding of the $26,250 payment was that it settled all claims between the parties through June 23, 2015. He testified he calculated the payment based on rent due through June. No settlement agreement was offered into evidence related to the payment or first forcible detainer action.

We imply from the county court's judgment that it found a valid lease between the parties and the PM Parties were in default for failing to timely pay June rent. Viewing the evidence in the light most favorable to the county court's determination, we conclude there is some evidence in the record that would enable a reasonable factfinder to conclude the PM Parties were in default under the lease. Song testified her accounts payable ledger showed rent due for June. Additionally,

---

[4] As to failures other than payment of rent, the lease states "[i]f Tenant fails to comply with this lease for any other reason within 10 days after Landlord notifies Tenant of its failure to comply, Tenant will be in default."

[5] Song offered two accounts payable ledgers into evidence at trial. After the entry of the $26,250 payment on the ledgers, both showed an outstanding balance of $5,300.

the $26,250 payment was made more than five days after June 1. The payment by the PM Parties, even if it included June rent, was untimely under the lease.

Further, while the PM Parties presented testimony that they paid June rent, we cannot conclude that finding the PM Parties in default under the lease is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. The PM Parties' understanding that the $26,250 payment cured any existing default under the lease was contested and there was no agreement offered to support the PM Parties' contention. Accordingly, there is legally and factually sufficient evidence that the PM Parties were in default under the lease for the failure to timely pay rent in June 2015.

The county court also impliedly concluded that notice of non-compliance was not required. The notice contained in the June 23, 2015 letter was not offered into evidence at trial. The PM Parties cite to no legal authority or provision in the lease requiring notice of non-compliance prior to a notice to vacate in this case. Additionally, our review of the lease does not reveal a requirement of notice of non-compliance for failure to timely pay rent under the lease. There is some evidence in the record from which a reasonable factfinder could conclude notice of non-compliance was not required, viewing the evidence in the light most favorable to the county court's judgment. Further, as the PM Parties offered no evidence establishing notice of non-compliance was required by law or the lease, this finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. Accordingly, we conclude the implied finding of the county court, that notice of non-compliance was not required, is supported by legally and factually sufficient evidence. We overrule the PM Parties' first issue.

### D. Damages

The PM Parties argue that the evidence is legally and factually insufficient

to support the county court's award for rent and ad valorem taxes. "Damages must be established with reasonable certainty, not mathematical precision." *O and B Farms, Inc. v. Black*, 300 S.W.3d 418, 422 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). We evaluate the legal and factual sufficiency of the evidence based on the measure of damages presented to the county court. *See Energy Maintenance Services Group I, LLC v. Sandt*, 401 S.W.3d 204, 219 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

We first address the PM Parties' subissue challenging any award of ad valorem taxes. The PM Parties contend Song is not entitled to an award of ad valorem taxes because Song failed to provide timely notice as required by the lease. The failure to provide timely notice is a defense to Song's claim for rent, which the evidence established was increased based on ad valorem taxes owed. In this case, the PM Parties' reliance on the timely notice requirement in contesting the amount due under the lease is an affirmative defense. The PM Parties' answer contained only a general denial and did not include any affirmative defense based on the failure to timely provide notice. The issue was not tried by consent. We conclude this affirmative defense was waived. *See* Tex. R. Civ. P. 94; *Hassell Const. Co., Inc. v. Stature Commercial Co., Inc.*, 162 S.W.3d 664, 667 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

The county court awarded $25,612 in damages. Song offered no evidence that she was entitled to precisely $25,612 in damages. At trial, Song did not pray for a specific amount, nor did she include a prayer for a specific amount in her petition. In response to questioning by the court, Song's counsel indicated that rent for June, July, August, September, and October was being contested.

The evidence established the rental rate under the lease was $3,750 per month. Song also introduced evidence that the rental rate was increased by

9

$1,471.50 per month due to the tenant's pro rata share of ad valorem taxes beginning June 1, 2015. Further, the lease provided for a late fee of 5% of the amount due if rental payments were not received within five days of the due date. The late fee based on an amount due including rent and ad valorem taxes is $261.07 per month.

We imply from the county court's judgment that it found Song entitled to damages, including rent, ad valorem taxes, and late fees, due to the PM Parties' default under the lease. Viewing the evidence in the light most favorable to the county court's determination, we conclude there was some evidence in the record as to the fact of damages which would support an award to Song by the county court. *See ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 877–78 (Tex. 2010); *Garza v. Cantu*, 431 S.W.3d 96, 108 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (noting courts distinguish between uncertainty as to the fact of damages, which is fatal to recovery, and uncertainty as to the amount of damages, which is not).

Based on a review of the record, we also conclude that there is legally and factually sufficient evidence of a higher amount of damages than that awarded by the county court. The evidence summarized above supported a monthly amount owed by the PM Parties, when rental payments were untimely, of $5,482.57. Had the court awarded damages as prayed for by Song from June to October, the damages award would have been $27,412.85. We also note the PM Parties and Song provide damage calculations in their briefs which exceed the amount awarded by the county court.

Because the record supports a higher award of damages, any error in the county court's damage award is harmless to the PM Parties. *See McCann v. Brown*, 725 S.W.2d 822, 824–25 (Tex. App.—Fort Worth 1987, no writ)

("appellant cannot complain that he was charged too little and thus obtain a new trial"); *Gulftide Gas Corp. v. Cox*, 699 S.W.2d 239, 244–45 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) ("Since the evidence was sufficient to support an award at least equal to that made by the jury, the error, if any, in calculating the measure of damages was either harmless or beneficial to appellant."). Because any error was harmless, we overrule the PM Parties' second issue. *See* Tex. R. App. P. 44.1.

### E.  Attorney's Fees and Costs

The PM Parties contend there is legally and factually insufficient evidence to support the county court's award of attorney's fees. Reasonable attorney's fees and costs are recoverable in this matter under section 24.006 of the Property Code and the lease. Tex. Prop. Code Ann. § 24.006(b), (d). An award of attorney's fees must be supported by evidence that the fees are reasonable and necessary. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). The reasonableness of attorney's fees is generally a fact issue. *See Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010). We review attorney's fee awards for an abuse of discretion. *Ridge Oil Co v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004).

Song sought to prove entitlement to reasonable attorney's fees by submitting an affidavit for attorney's fees with billing time sheets attached in support. No testimony was offered regarding Song's claim for attorney's fees. The affidavit submitted in support of Song's claim for attorney's fees used the lodestar method relating the hours worked multiplied by the hourly rate for a total fee. *See Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014). We evaluate the sufficiency of evidence supporting the attorney's fees awarded in this case under the lodestar method. *See Auz v. Cisneros*, 477 S.W.3d 355, 360 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

11

When a party applies for an award of attorney's fees under the lodestar method by multiplying hours worked by a reasonable hourly fee, as did Song, it bears the burden of documenting the hours expended on the litigation and the value of those hours. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). The proof should include the nature of the work, who performed the services and his rate, approximately when the services were performed, and the number of hours worked. *Id.* at 763. This proof may not be based on generalities, and requires enough specific details of who performed which tasks when and at what rate so that the trial court has sufficient information to meaningfully review the fee request. *Long*, 442 S.W.3d at 255.

The affidavit for attorney's fees stated 26.80 hours were spent on this case. Billing time sheets were attached in support of the affidavit which included time entries, with general descriptions, totaling 16.20 hours. While the billing time sheets state "total billable hours: 26.80" there are no time entries detailing work for the remaining 10.60 hours. As Song did not present trial testimony regarding attorney's fees, no evidence beyond the affidavit and billing time sheets was offered in support of attorney's fees.

The county court awarded attorney's fees in the full amount stated in the affidavit, $6,700, based on 26.80 hours worked. Without additional evidence as to the nature of the work performed during the 10.60 hours not reflected on the billing sheets, Song failed to submit legally sufficient evidence to allow for meaningful review of the entire amount of attorney's fees claimed. We conclude that although there is evidence to support an award of attorney's fees, the amount of fees awarded by the county court is not supported by legally sufficient evidence. We sustain the PM Parties' third issue as to attorney's fees and reverse and remand the award of attorney's fees for a redetermination of the award. *See El Apple*, 370

12

S.W.3d at 765; *Auz*, 477 S.W.3d at 362.

The PM Parties also challenge the county court's award of costs contending not all costs shown on the billing sheet are related to this case and there is a duplication of the filing fee.[6] In response, Song states she will "concur in a just reduction of her recoverable costs: [sic] for example, she will forego costs pertaining to the prior eviction proceeding." To preserve error for appellate review, a timely and reasonably specific objection, followed by an adverse ruling, is required. Tex. R. App. P. 33.1(a). Failure to file a motion to modify or retax costs results in a waiver of the right to complain on appeal. *See Jackson v. LongAgriBusiness, L.L.C.*, 2013 WL 84921, *6 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Wright v. Pino*, 163 S.W.3d 259, 261–62 (Tex. App.—Fort Worth 2005, no pet.). However, because Song concurs in a just reduction of costs, we modify the award in the amount of $532, for costs arising prior to the forcible detainer action in which judgment was rendered and the reflection of a duplicative filing fee for this case not reflected on the clerk's bill of costs in the record. *See Wright*, 163 S.W.3d at 262 (modifying award of costs based on appellee agreement that amount erroneously included even though error not preserved). We modify the award of taxable costs by that amount to a total of $304.53. Otherwise, we conclude the PM Parties failed to preserve error as to the calculation of court costs.

We sustain the PM Parties' third issue as to attorney's fees and reverse and remand this case for a redetermination of attorney's fees. We modify the award of costs and otherwise, overrule the remainder of the PM Parties' third issue.

---

[6] We review the PM Parties' challenge to the award of court costs to determine if there is a basis for the costs awarded, not to determine if sufficient evidence was presented at trial to prove each cost.

### F. Personal Liability of Piper

The PM Parties contend that the evidence is insufficient to establish that Piper is personally liable in his individual capacity as a guarantor on the lease. Song contends there is sufficient evidence that Piper is personally liable as a tenant and a party under the lease. While the PM Parties state the finding is both legally and factually insufficient, they challenge the county court's finding of liability as to Piper based on a no-evidence challenge. Accordingly, we construe this issue as a legal-sufficiency challenge.

Piper testified he is the managing partner of PM Holdings. He stated he was representing himself and PM Holdings during the trial. The evidence at trial did not include the management agreement for PM Holdings. Song did not contest PM Holdings' status as a limited-liability company. For our purposes we presume PM Holdings is a properly organized limited-liability company such that a member would generally be immune from liability for its debts. *See* Tex. Bus. Orgs. Code Ann. § 101.114 (West 2012).

Mize testified at trial that he assigned his leasehold interest to Piper. The assignment is not in the record on appeal. Piper also testified that the lease in the record was the commercial lease he assumed from Mize other than the handwritten notations. The testimony is unclear as to whether the lease was assumed by Piper personally or in his capacity as managing partner of PM Holdings.

We imply from the county court's judgment it found Piper personally liable. Viewing the evidence in a light most favorable to the county court's decision, there is some evidence that Piper individually, and not PM Holdings, was the assignee of the lease. Based on this evidence, a reasonable factfinder could conclude Piper is personally liable on the lease. We overrule the PM Parties' fourth issue.

14

## III.   CONCLUSION

We reverse the portion of the county court's judgment awarding attorney's fees and remand for a redetermination of attorney's fees consistent with this opinion.   We modify the award of taxable costs to a total of $304.53.   The remainder of the county court's judgment is affirmed as modified.


/s/    Marc W. Brown
Justice


Panel consists of Justices Busby, Donovan, and Brown.